JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Jacqueline Rivera, appeals the trial court's judgments (1) granting the motion for summary judgment of defendant-appellee, Challenge Financial Investors Corp. ("CFIC"), (2) denying Rivera's motion to strike exhibit B to CFIC's motion for summary judgment, and (3) denying Rivera's motion for leave to file an amended complaint. We affirm.
PROCEDURAL HISTORY {¶ 2} Rivera initiated this purported class action suit[1] on her behalf and "all other members of a class of similarly situated persons," for CFIC's alleged failure to provide mortgage loan origination disclosure statements (count one), and make a full advance disclosure that CFIC had received a payment of money from the lender (count two). Rivera also claimed that CFIC had breached its fiduciary duties to her and the class (count three). The allegations in Rivera's complaint stemmed from an April 2003 transaction she allegedly entered into with CFIC.
 {¶ 3} In its answer, CFIC maintained that Kirkneil Williams, the person with whom Rivera dealt in regard to the April 2003 transaction, had not been an employee of CFIC since December 2002, when his employment with the company was terminated because he had lost his state of Ohio mortgage loan officer license. *Page 4 
 {¶ 4} After the parties engaged in discovery, CFIC filed a motion for summary judgment. While the motion was pending, Rivera filed a motion for leave to amend her complaint, wherein she sought to add a new-party plaintiff. Rivera also filed a motion to strike exhibit B of CFIC's summary judgment motion. The court denied both of Rivera's motions and granted CFIC's motion for summary judgment.
FACTS OF THE CASE {¶ 5} Rivera and her husband purchased a home in Cleveland, Ohio in 1997 for $10,000 on a land contract. They received the deed for the home in 1999 after they finished paying the purchase price. Rivera then mortgaged the house four times in four years as follows:
 • mortgage number one was in August 1999. Rivera borrowed $38,600;
 • mortgage number two was in January 2000. Rivera borrowed $56,000.
 • Rivera paid off the first mortgage and had cash to spare;
 • mortgage number three was in November 2001. The loan was for $88,500 and was obtained with Williams' assistance. Rivera paid off the second mortgage and had over $20,000 of surplus cash;
 • mortgage number four was in April 2003, and was obtained with Williams' assistance. The loan was for $109,600. Rivera paid off the third loan and received $9,737. *Page 5 
 {¶ 6} Rivera testified at her deposition that she learned of Williams from his sister, who was Rivera's hairdresser. In regard to obtaining the third and fourth mortgages, Rivera contacted Williams at his home by phone. Williams told Rivera that he worked for "Challenge Mortgage."[2] During several telephone conversations, Williams obtained from Rivera the necessary information to process her applications. She never visited him in any office setting, and when her applications were complete, Williams brought them to either her place of employment or her house for her signature.
 {¶ 7} Rivera further testified that she used Williams for the fourth mortgage because she "didn't have a problem with him[,] [h]e just did what he was supposed to do." She also testified that she "didn't care" about who Williams worked for and the name "Challenge Mortgage" did not mean anything to her.
 {¶ 8} In response to Rivera's discovery requests, CFIC's vice president stated that CFIC did not receive any payment or benefit from Rivera and Williams' April 2003 transaction, and that CFIC had no knowledge of the transaction, as Williams was no longer under its employ at that time.
MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT {¶ 9} Initially, we consider the court's judgment denying Rivera's motion to strike exhibit B to CFIC's summary judgment motion. Civ. R. 56(C) provides *Page 6 
that the court may consider the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact in deciding a summary judgment motion. Civ. R. 56(E) further provides, in pertinent part, as follows:
 {¶ 10} "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit."
 {¶ 11} Absent an abuse of discretion, a trial court's decision on a motion to strike will not be overturned on appeal. Hicks v. Toledo BladeCo., Lucas App. No. L-03-1317, 2004-Ohio-5241, at ¶ 29, citing Early v.The Toledo Blade (1998), 130 Ohio App.3d 302, 318, 720 N.E.2d 107. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 12} Exhibit B was the affidavit of CFIC's counsel, Mark O'Neill, along with eight documents. The documents were:
 • (1) a December 6, 2002 letter from the Ohio Department of Commerce to CFIC's president stating that Williams had not passed the loan officer examination and was no longer licensed by the state of Ohio; *Page 7 
 • (2) a December 2, 2002 letter from the Ohio Department of Commerce to Williams advising that he was no longer authorized to conduct business under the Ohio Mortgage Broker Act because his license was terminated due to his failure to successfully complete the loan officer examination;
 • (3) a December 16, 2002 internal CFIC memorandum from the company's vice president recommending Williams' termination;
 • (4) a December 16, 2002 internal CFIC email advising that Williams had been terminated;
 • (5) another December 16, 2002 internal CFIC memorandum advising that Williams' hire date was January 23, 2001 and his termination date was December 16, 2002;
 • (6) a December 17, 2002 letter from CFIC's president to Williams advising termination of his employment and requesting that he "immediately cease and desist from representing [himself] as a representative of any sort of Challenge Financial Investors Corp. [and] return * * * all files and original licenses";
 • (7) a December 17, 2002 "Employee Separation Notice" noting Williams' termination from CFIC; and
 • (8) a December 17, 2002 internal CFIC email advising of Williams' termination. *Page 8 
 {¶ 13} The essence of Rivera's motion to strike was that O'Neill was not a competent witness to attest to the documents. We disagree.
 {¶ 14} Two of the documents were letters issued by the Ohio Department of Commerce and were official "reports" and "statements" of a "public office or agency," admissible under Evid. R. 803(8).[3] Additionally, under Evid. R. 902, [4] the letters, marked with the seal of the state of Ohio and signed by the Deputy Superintendent for Consumer Finance, were self authenticating. *Page 9 
 {¶ 15} In regard to the remaining documents, which were internal CFIC documents, O'Neill averred that they were "true and unaltered [copies of the documents] in the Human Resources Department file sent to [him] by in-house counsel for Challenge Financial Investors Corp." O'Neill further averred that after he received the documents, he forwarded them to Rivera's counsel. Based on his affidavit, O'Neill was a competent witness.
 {¶ 16} On this record, the court did not abuse its discretion by denying Rivera's motion to strike and her second assignment of error is overruled. We now consider the court's ruling on the summary judgment motion.
 {¶ 17} We review a summary judgment de novo. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citingBrown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711,622 N.E.2d 1153. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107, 614 N.E.2d 765; Brown at 711. We must affirm the trial court's judgment if any of the grounds the movant raised in the trial court support it. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38,41-42, 654 N.E.2d 1327. *Page 10 
 {¶ 18} Pursuant to Civ. R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46.
 {¶ 19} When a motion for summary judgment is made and supported as provided for in Civ. R. 56(C), the non-moving party may not rest upon the mere allegations and denials in the pleadings. The non-moving party is then obligated to submit or point to some evidentiary material showing that there is a genuine issue for trial. Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801-802.
 {¶ 20} CFIC's position in its motion was that there was no employment or agency relationship between it and Williams and, therefore, it was entitled to judgment as a matter of law. In addition to the affidavit and documents already *Page 11 
discussed, CFIC submitted its answer, responses to Rivera's discovery requests, and Rivera's deposition testimony in support of its motion. That supporting documentation demonstrated that, in April 2003, when Rivera and Williams entered into the subject transaction, Williams was not an employee or agent of CFIC, and that CFIC had no knowledge of the transaction. The documentation further demonstrated that CFIC did not provided any services, or receive any payment or benefit as a result of Rivera and Williams' April 2003 transaction.
 {¶ 21} Moreover, the documentation, and more specifically, Rivera's deposition testimony, established that Rivera primarily dealt with Williams over the phone (calling him at home), never met with him in an office, "didn't care" who he worked for, and liked dealing with him because "[h]e just did what he was supposed to do." The only face-to-face interaction Rivera had with Williams was when he came to her place of employment and house so that she could sign the loan applications.
 {¶ 22} In opposition to CFIC's motion, Rivera argued that based on her dealings with Williams in November 2001, when he was a CFIC employee, Williams had apparent authority to act on CFIC's behalf in April 2003. Specifically, Rivera argued that CFIC did not present any evidence that it notified her, or other persons and companies with whom Williams had dealt with when he was employed by CFIC that he was no longer an employee of the company. *Page 12 
 {¶ 23} In order to establish an apparent agency, the evidence must show that the principal held the agent out to the public as possessing sufficient authority to act on its behalf and that the person dealing with the agent knew these facts, and acting in good faith had reason to believe that the agent possessed the necessary authority. Master Consol.Corp. v. BancOhio Natl. Bank (1991), 61 Ohio St.3d 570, 575 N.E.2d 817, syllabus. Under an apparent-authority analysis, an agent's authority isdetermined by the acts of the principal rather than by the acts of theagent. The principal is responsible for the agent's acts only when the principal has clothed the agent with apparent authority and not when the agent's own conduct has created the apparent authority. Id. at 576-577.
 {¶ 24} In support of her apparent-agency claim, Rivera submitted the following documents in opposition to the summary judgment motion:
 • exhibit A: a computer printout with notes (ostensibly from a program used by CFIC) that purportedly established that Williams was hired by CFIC on January 22, 2001;[5]
 • exhibit B: a "Branch Manager Checklist" (ostensibly completed by CFIC) showing that Williams was provided with an operations manual; *Page 13 
 • exhibit C: a CFIC notice to Williams detailing what the Federal Housing Administration ("FHA") requires for an individual to receive a Housing and Urban Development ("HUD") number (e.g., the notice required that CFIC's name be included on Williams' lease, phone bill, utility bill and equipment leases);
 • exhibit D: a CFIC computer printout showing 18 transactions associated with Williams, including the November 21, 2001 transaction. (As was the case with exhibit A, this point was never denied by CFIC. See footnote five);
 • exhibits E and F: HUD settlement statements for the April 2003 transaction listing several items payable in connection with the loan to "Challenge Mortgage"; and
 • exhibit G: a copy of an April 30, 2003 check for $2,752 issued by Heights Title Agency, Inc., payable to "Challenge Mortgage," and an endorsement by "Challenge Mtge."
 {¶ 25} Upon review, Rivera failed "to submit or point to some evidentiary material showing that there is a genuine issue for trial."Mitseff at 115. As already alluded to, the documentation submitted by Rivera was irrelevant. Specifically, it was uncontested that Williams did, at one point in time, work for CFIC. The central issue was whether, in April 2003, when Williams was not a CFIC employee, CFIC clothed Williams with apparent authority to act on its *Page 14 
behalf. The evidence simply demonstrates that it did not. Moreover, we are not persuaded by Rivera's contention, and find no requirement in the law, that CFIC was obligated to notify Rivera that Williams had been terminated.
 {¶ 26} Additionally, in regard to Rivera's argument that exhibits E, F, and G, establish that CFIC received payment as a result of the April 2003 transaction, we note that those documents indicate that "Challenge Mortgage/Challenge Mtge." received payment. As previously mentioned, CFIC denied that it did business as "Challenge Mortgage." Rivera claimed that CFIC did business as "Challenge Mortgage," but presented no evidence whatsoever in support of that allegation. Rivera cannot rest on her mere allegation in order to establish a genuine issue.
 {¶ 27} Accordingly, the trial court did not err by granting CFIC's motion for summary judgment and the first assignment of error is overruled.
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT {¶ 28} In her final assignment of error, Rivera contends that the trial court abused its discretion by denying her leave to file an amended complaint. We disagree.
 {¶ 29} Civ. R. 15(A), governing amended pleadings, provides that "[l]eave of court shall be freely given when justice so requires." Leave to file an amended complaint lies in a trial court's sound discretion.Hoskinson v. Lambert, Licking App. No. 06 CA 037, 2006-Ohio-6940, ¶ 33. *Page 15 
 {¶ 30} The proposed amended complaint, filed after discovery had been completed and while CFIC's motion for summary judgment was pending, sought to add a new-party plaintiff. In her motion, Rivera stated that the claims of the proposed new-party plaintiff "can be brought in a separate action[,] [b]ut Defendant's best interests, and the court's interest in judicial economy, would be best served if [her] claims were brought in this action." On this record, the trial court did not abuse its discretion by denying Rivera's motion. Accordingly, the third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and MARY J. BOYLE, J., CONCUR.
[1] No ruling was made by the trial court on the issue of class certification. The issue was not raised by either party at the trial court level or in this appeal.
[2] Rivera alleged in her complaint that CFIC does business in Ohio under the name "Challenge Mortgage." See ¶ 7 of complaint. CFIC denied this assertion in its answer. See ¶ 7 of amended answer.
[3] Evid. R. 803, governing exceptions to the hearsay rule, provides in pertinent part that:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
"* * *
"Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth * * * matters observed pursuant to duty imposed by law as to which matters there was a duty to report * * * unless the sources of information or other circumstances indicate lack of trustworthiness." Evid. R. 803(8).
[4] Evid. R. 902, governing self-authenticating documents, provides in pertinent part that:
"Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
"(1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory * * * and a signature purporting to be an attestation or execution.
"(2) Domestic public documents not under seal. A document purporting to bear the signature in the official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine."
[5] The printout does not conclusively establish Williams' date of hire; it contains notes regarding some of the details leading up to his employment with CFIC (e.g., applying for a state license). That notwithstanding, CFIC admitted that Williams was hired in January 2001. Its point of contention was that Williams was fired in December 2002 and, thus, was not acting on CFIC's behalf in regard to the April 2003 transaction with Rivera. *Page 1