[Cite as *State v. Smith*, 2011-Ohio-2189.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :     C.A. CASE NO. 23945

vs.                              :     T.C. CASE NO. 04CR3554

RONALD A. SMITH                  :     (Criminal Appeal from
                                         Common Pleas Court)
    Defendant-Appellant         :

. . . . . . . . .

O P I N I O N

Rendered on the 6th day of May, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; R. Lynn Nothstine, Asst. Pros. Attorney, Atty. Reg. No.0061560, P.O. Box 972, Dayton, Ohio 45422
    Attorneys for Plaintiff-Appellee

Ronald A. Smith, #516-443, P.O. Box 56, London, Ohio 45036
    Defendant-Appellant, Pro Se

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Ronald Smith, appeals from a final judgment denying his motion for a new trial based on a claim of newly discovered evidence.

{¶ 2} In 2005, Defendant was found guilty following a jury

trial of aggravated burglary and aggravated robbery. The trial court sentenced Defendant to consecutive ten year prison terms, for a total sentence of twenty years. We affirmed Defendant's convictions and sentences on direct appeal. *State v. Smith*, Montgomery App. Nos. 21463, 22334, 2008-Ohio-6330. In our Opinion, at ¶3-8, we set forth the facts of this case as follows:

{¶ 3} "During the evening hours of September 27, 2004, two African-American males, one identifying himself as 'Little Ronnie,' kicked in the front door of Latisha Robinson's apartment and entered. The man identifying himself as Little Ronnie, was armed with a gun. He got in her face and demanded to know where her boyfriend, Corey Pullings, was. The other man went to her back door and opened it, allowing three additional men to enter the apartment.

{¶ 4} "When Robinson denied any knowledge of Pullings, Little Ronnie went upstairs in the apartment, tearing the handrail off the wall, and he went into Robinson's bedroom putting the gun to her son's head. He then demanded Robinson give him something to get him to leave. Robinson gave one of the men sixty dollars and her cell phone.

{¶ 5} "Meanwhile, the four men downstairs ransacked Robinson's apartment, toppling furniture and rummaging through boxes, throwing things to the floor. The men took additional items from

the apartment, including radios and CD's. During the ransacking of the apartment, the gunman, who repeatedly identified himself as 'Little Ronnie,' and Robinson were engaged in a confrontation in the dining room where he attempted to force Robinson to lay on the floor 'like execution style.' Finally, after the other men exited the apartment, 'Little Ronnie' ran out, too.

{¶ 6} "Robinson then escaped to a neighbor's apartment, where the police were called. The next day, Detective Ward, of the Montgomery County Sheriff's Office prepared a photo spread containing a picture of Ronald Smith, the only individual the detective knew that called himself 'Little Ronnie.' Robinson could not identify anyone in the photo spread. Subsequently, when Robinson was viewing serial photos on the detective's computer screen, a photo of Smith came up, showing his gold teeth that were not displayed in the prior photo. Robinson indicated that this picture of Smith 'could possibly be the person who was in [her] house.'

{¶ 7} "Subsequently, a neighbor, who had opened his door while Smith and the others were knocking at Robinson's door, immediately picked out Smith from a photo spread as the man at her door, and who had identified himself as Little Ronnie.

{¶ 8} "Smith was arrested. After being Mirandized, Smith admitted that he and four others went to Robinson's apartment

looking for Corey Pullings, but claimed that he left after being told that he was not there. He claimed that one of the other men kicked in the door and entered, but denied that he ever entered the apartment. Prior to trial, Smith made a number of phone calls attempting to get Robinson to take a payoff to drop the charges, and attempting to set up an excuse for why he was in the area."

{¶ 9}  Since he was convicted and sentenced in 2005, Defendant has over the years filed twelve separate motions for a new trial, the most recent of which is the subject of this appeal.  On February 10, 2010, Defendant filed that motion for a new trial on February 10, 2010 based upon a claim of newly discovered evidence.  Crim.R. 33(A)(6).  In support of his motion, Defendant attached his own affidavit and the affidavit of Theron Lewis, a fellow prison inmate.

{¶ 10} Lewis stated in his affidavit that he was present when this crime occurred, and that he saw Laquan Scandrick, aka "Little Ronnie," and another man kick open the door to Latisha Robinson's apartment and go inside.  The next day Lewis purchased a birth certificate from Scandrick that had been stolen from Robinson's apartment.  Lewis claims that Defendant was wrongly convicted for a crime that Scandrick committed.  In his own affidavit, Defendant claims that he was unavoidably prevented from discovering Lewis's new evidence, within one hundred and twenty days after the guilty

verdicts were rendered because he did not know Theron Lewis until they met in prison on January 26, 2010. Crim.R. 33(B).

{¶ 11} On March 1, 2010, the trial court summarily denied Defendant's motion for a new trial without a hearing. Based upon Defendant's history of repeatedly trying to obstruct justice in this case both before and after the guilty verdicts were rendered, including the filing of a false witness affidavit, the trial court concluded that Defendant's affidavit is not credible, and he has not demonstrated by clear and convincing proof that he was unavoidably prevented from discovering the facts in Lewis' affidavit. The court further concluded, based upon the evidence presented at the trial, that Defendant has failed to show a strong probability that the proposed testimony of Theron Lewis would change the result of the trial.

{¶ 12} Defendant timely appealed to this court from the trial court's decision overruling his latest motion for a new trial.

### FIRST ASSIGNMENT OF ERROR

{¶ 13} "THE TRIAL JUDGE ABUSED HIS DISCRETION BY OVERRULING THE MOTION FOR NEW TRIAL FILED FEBRUARY 10, 2010 WITHOUT FIRST CONDUCTING A EVIDENTIARY HEARING."

{¶ 14} "The decision whether to grant a motion for a new trial lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State*

*v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54.

{¶ 15} "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 16} "'A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.' *AAAA Enterprises, Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

{¶ 17} "Pursuant to Crim.R. 33(A)(6), a new trial may be granted when new evidence material to the defense is discovered that the defendant could not with reasonable diligence have discovered and produced at trial. To prevail on a motion for new trial based upon newly discovered evidence, Defendant must show that the new evidence: (1) discloses a strong probability that the result of the trial would be different if a new trial were granted; (2) has been discovered since the trial; (3) is such as could not have

been discovered before the trial through the exercise of due diligence; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence. *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370.

{¶ 18} "Motions for a new trial based upon newly discovered evidence must be filed within one hundred twenty days after the verdict was rendered unless it appears by clear and convincing proof that Defendant was unavoidably prevented from discovering the new evidence, in which case the motion for new trial must be filed within seven days from the order of the court finding that Defendant was unavoidably prevented from discovering the new evidence within the one hundred twenty day period. Crim.R. 33(B)." *State v. DeVaughns*, Montgomery App. No. 23720, 2011-Ohio-125 at ¶16-20.

{¶ 19} The guilty verdicts in this case were returned by the jury on September 7, 2005. This motion for a new trial was filed on February 10, 2010, over four years and four months after the guilty verdicts. Obviously, Defendant's motion for a new trial is untimely, and he was required to demonstrate by clear and convincing proof that he was unavoidably prevented from discovering the new evidence within one hundred and twenty days after the guilty verdicts were rendered. The trial court concluded that Defendant

failed to do that.

{¶ 20} The court's finding that Defendant failed to demonstrate that he was unavoidably prevented from discovering the new evidence was based upon its conclusion that Defendant's affidavit is not credible. That was based, in part, upon what the court called the suspicious timing of Defendant's affidavit, which was signed on February 1, 2010, just twenty-two days after the Ohio Supreme Court had affirmed Defendant's conviction and sentence. *State v. Smith*, 124 Ohio St.3d 116, 2009-Ohio-6539. The trial court described it as "an incredible coincidence" that in such a short time after the Supreme Court's decision upholding Defendant's conviction, "Smith should have the good luck of discovering this new exculpatory witness." The trial court's finding that Defendant's affidavit is not credible was also based, in part, upon Defendant's repeated efforts to obstruct justice in this case, both before and after the trial, and his filing of a false affidavit from Elonda Lewis in support of a previous motion for a new trial.

{¶ 21} We find no abuse of discretion in the trial court's denial of Smith's motion on the court's finding that his affidavit is not credible. Further, even had Defendant demonstrated by clear and convincing proof that he was unavoidably prevented from discovering the facts alleged in Theron Lewis' affidavit within

one hundred twenty days after the guilty verdicts, he failed to demonstrate a strong probability that this new evidence would change the result of the trial.

{¶ 22} Latisha Robinson, the victim, testified at trial that the primary assailant referred to himself as "Little Ronnie." Patty Swain, who has known Defendant for four years, testified that everyone refers to Defendant as "Little Ronnie." Robinson also testified that "Little Ronnie" had gold teeth and nappy hair. Robinson's neighbor, Thomas Johnson, testified that the man he observed from his doorway had gold teeth and braided hair. Johnson identified Defendant from a photospread as that man. Detective Ward testified that Defendant had gold teeth. Defendant's former girlfriend, Tyelisha Ross, testified that the day before police arrested Defendant, he had his cousin cut off his braided hair.

{¶ 23} In his statement to Detective Ward, Defendant placed himself at Robinson's front door. He claimed he had been paid to beat up Robinson's boyfriend, Cory Pullings. According to Defendant, when Robinson said Cory Pullings was not there, he left. Patty Swain testified that she participated in a three way telephone conversation with Defendant and Tyelisha Ross during which Defendant asked Swain to act as a "go between" and offer Latisha Robinson $1,500.00 to drop the charges. Ross confirmed

that this conversation occurred.

{¶ 24} In *Dayton v. Martin* (1987), 43 Ohio App.3d 87, 90, we wrote:

{¶ 25} "While *Petro* stands for the proposition that newly discovered evidence that *merely* impeaches or contradicts other evidence is not enough for a new trial, we do not read *Petro* as establishing a *per se* rule excluding newly discovered evidence as a basis for a new trial simply because that evidence is in the nature of impeaching or contradicting evidence. The test is whether the newly discovered evidence would create a strong probability of a different result at trial, or whether it is merely impeaching or contradicting evidence that is insufficient to create a strong probability of a different result." (Internal citations omitted.)

{¶ 26} In view of the evidence that was introduced at Defendant's trial, we find that Defendant has failed to demonstrate a strong probability that the new evidence would change the result if a new trial were granted. The trial court did not abuse its discretion by overruling Defendant's motion for a new trial without a hearing.

{¶ 27} Defendant's assignment of error is overruled. The judgment of the trial court will be affirmed.

DONOVAN, J. And HALL, J., concur.

Copies mailed to:

R. Lynn Nothstine, Esq.
Ronald A. Smith
Hon. Dennis J. Langer