[Cite as *State v. Tucker*, 2013-Ohio-2527.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98685**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHRISTOPHER TUCKER

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-437731

**BEFORE:** Blackmon, J., Stewart, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** June 20, 2013

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender

Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Katherine Mullin
Assistant County Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1}   Appellant Christopher Tucker appeals the trial court's denial of his petition for postconviction relief and motion for new trial and assigns the following errors for our review:

> **I.  The trial court violated Mr. Tucker's constitutional right to due process and violated this court's order on remand by significantly narrowing the scope of his evidentiary hearing.**
>
> **II.  The trial court violated Mr. Tucker's right to due process when it denied relief and a new trial notwithstanding the presentation of new evidence which provided credible support for his longstanding alibi.**

{¶2}   Having reviewed the record and pertinent law, we affirm the trial court's decision.   The apposite facts follow.

### Facts

{¶3}   Tucker was convicted of aggravated murder for the shooting death of Timothy Austin on May 22, 2003, outside Whatley's Lounge in Cleveland, Ohio.   At trial, Nikia Beal and Joseph Fussell were the only witnesses to identify Tucker as the shooter. Beal was with Austin at the bar.   She testified that she noticed Tucker inside the bar because he had been staring at her.   When she and Austin walked outside the bar she heard gunshots and saw Austin fall to the ground.   She stated she was looking at Tucker while he shot Austin and that he did not stop shooting until he was out of bullets. According to Beal, the area of the shooting was well lit by street lights.   On her way home, someone told her the shooter's name was Christopher Tucker.   She searched his name on the internet and found a photograph that matched the man she saw shoot Austin.

She did not immediately go to police out of fear of retaliation. About a month after the shooting the police came to her apartment to question her.

{¶4} Fussell testified at trial that he had attended high school with Tucker. He saw Tucker at the bar and gave him a hug. Fussell then left to buy a cigar from the gas station across the street. He heard gunshots and saw Tucker shooting Austin. Fussell waited to contact officers until the next day out of fear. Although he knew Tucker, he could not recall his name. He identified Tucker after looking at photographs in a mug shot book.

{¶5} At trial, Tucker maintained he was inside the bar during the shooting and presented witnesses, who were also his friends, in support of his alibi. One of his friends, Lahondra Hill, originally told police that Tucker was outside when the shootings occurred but later changed his testimony at trial. Tucker's other friend, Stefan King, did not provide police with a statement. However, he testified at trial that Tucker was inside the bar. Tucker admitted that he knew Austin and that Austin had carjacked him in 1996 and had never apologized.

{¶6} Austin was in prison from 1996 until a month prior to the shooting. Tucker had just been released from prison two days prior to the shooting. Therefore, Tucker had seen Austin for the first time since the carjacking at Whatley's bar.

{¶7} The jury found Tucker guilty of aggravated murder and a firearm specification. The trial court sentenced him to three years for the firearm specification to be served consecutive to life in prison for the aggravated murder.[1] Tucker filed an appeal,

---

[1]Tucker also entered a plea of no contest to a charge of having a weapon while

and we affirmed his conviction. *State v. Tucker*, 8th Dist. No. 83419, 2004-Ohio-5380 ("*Tucker* I").

{¶8} Thereafter, Tucker filed a petition for postconviction relief on April 24, 2004, arguing, among other things, that he was told that Nikia Beal had stated after the trial that she did not see the shooter because she ran once she heard the gunshots. He contended he could provide affidavits of people attesting to Beal's recantation; however, he failed to attach any evidence regarding her recantation to the petition.

{¶9} Tucker also filed a motion for a new trial on August 2, 2004, in which he argued that a new trial was warranted because Joseph Fussell had recanted. Attached to his motion was an affidavit from Fussell simply stating, "what I said I saw last year in May at Whatley's Bar is not what I really saw. I was mistaken. It was not Christopher Tucker."[2]

{¶10} The trial court concluded that Tucker's petition for postconviction relief was untimely and that the recantation of one witness when two witnesses identified Tucker as the killer was insufficient to grant a new trial. Instead of immediately filing an appeal to this court, Tucker waited until June 2, 2006, to file a motion for a delayed appeal, which we denied. *State v. Tucker*, 8th Dist. No. 88254 (July 6, 2006) ("*Tucker* II").

---

under disability and was sentenced to six months for the charge.

[2] The trial court granted a hearing regarding Fussell's recantation only. However, the judge that granted the hearing was replaced due to a lost election. The state filed a motion for reconsideration with the successor judge regarding the granting of the hearing, which the trial court granted.

{¶11} On August 2, 2007, Tucker filed a second petition for postconviction relief and a motion for a new trial. In support of these motions, he presented an affidavit from D.R.,[3] who stated that Tucker was inside the bar at the time the shooting took place outside the bar. D.R. stated that she did not know Tucker or his family, but was a neutral observer. The trial court denied the motions without a hearing. Tucker appealed the trial court's denial of the motions. This court agreed that the trial court should have conducted a hearing regarding D.R.'s affidavit, but also held that Tucker's attempt to appeal the denial of his first petition for postconviction relief and motion for new trial were barred by res judicata because we had denied his delayed appeal in *Tucker* II. *State v. Tucker*, 8th Dist. No. 90799, 2008-Ohio-5748 ("*Tucker* III").

{¶12} Prior to the court conducting the hearing on remand, Tucker again attempted to appeal from the trial court's denial of his first petition for postconviction relief and motion for a new trial that he attempted to appeal in *Tucker* II. He argued his appeal was timely filed because he was never served with notice of the trial court's judgment. This court agreed and considered Tucker's appeal.

{¶13} We held that the trial court correctly denied Tucker's first petition because he failed to attach an affidavit in support of his contention that Beal had stated that she could not identify the shooter. We also held the trial court did not err by denying Tucker's motion for a new trial based on Fussell's recantation because it was untimely filed. We also held that because of Beal's testimony identifying Tucker as the shooter, Fussell's

---

[3]In court proceedings below, this witness asked to not be publicly identified; therefore, in accordance with these wishes, we identify the witness by initials.

affidavit would not have changed the result of the trial. We remanded the matter for the trial court to conduct the hearing ordered in *Tucker* III. *State v. Tucker*, 8th Dist. No. 95556, 2011-Ohio-4092 (*"Tucker* IV").

{¶14} Prior to the court conducting the evidentiary hearing, and prior to this court's ruling in *Tucker* IV, Tucker filed several motions in an attempt to expand the scope of the evidence to be considered at the hearing to include evidence that corroborated D.R.'s affidavit. He attempted to include affidavits by John Blue, Arthur Storey, Khaalis Miller, and Joe McLemore, who he contended were four new witnesses that either placed Tucker inside the bar at the time of the shooting, or saw someone other than Tucker commit the shooting. He also attempted to include a more expanded affidavit by Joseph Fussell, a polygraph test Tucker successfully passed seven years after his conviction, and the report of an expert regarding the reliability of Beal's eyewitness testimony.

{¶15} The trial court initially allowed some expanded evidence in, but stated that the scope may change after the appellate court issued its decision in *Tucker* IV. After *Tucker* IV, the trial court limited the scope of the hearing to "Petitioner's motion for postconviction relief and/or motion for new trial filed August 2, 2007, only." Journal Entry, April 13, 2012 (Emphasis sic.) The court contended Tucker's motion for leave to supplement the motion for new trial, amendment or supplement to motion for leave to file supplement to motion for new trial, and petitioner's prehearing submission and response were "barred by res judicata, untimely, and the alleged new evidence fails to meet the standard in Criminal Rule 33(A)(6) as well as the requirements held by the Supreme Court

of Ohio in *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370."  Journal Entry, April 13, 2012.

{¶16} On April 16, 2012, the trial court conducted the evidentiary hearing at which D.R. testified in support of her affidavit.  According to D.R., she contacted authorities in response to a flier she saw posted with Tucker's photograph in January 2007.  The flier was posted by Tucker's family, who requested information from anyone that was at Whatley's Lounge the night of the murder and contended Tucker was a wrongly convicted man.  D.R. kept the flyer for about a month prior to contacting Tucker's attorney listed on the flier.  D.R. testified that she did not know Tucker or his family and that she only contacted Tucker's attorney because she felt it was the right thing to do.

{¶17} D.R. recognized Tucker from the photo because she was at Whatley's Bar the night in question.  She claimed that Tucker was sitting near her playing a video game that she wanted to play.  At one point, Tucker got up and she asked him if he was finished with the game.  He responded he was not finished but was going to the juke box.  She jokingly told him to play a song for her.  According to D.R., as Tucker was returning from the juke box, shots were fired outside the bar.  She stated that the people inside the bar rushed outside.  She recalled Tucker was in front of her when exiting the bar because he was wearing a jacket with a Chief Wahoo logo on the back.

{¶18} The trial court concluded that D.R.'s testimony was merely cumulative evidence because Tucker had two alibi witnesses that testified that D.R. was inside the bar at the time of the shooting.  The court also found problems with D.R.'s identification of Tucker.  The court noted D.R. had only spoken with Tucker for a "split second" and had

stated that Tucker was wearing a Chief Wahoo jacket, when the evidence indicated he was wearing a blue Phat Pharm jacket. In her affidavit, D.R. also stated that she saw Tucker get into a car with his friends and leave, while at the hearing she stated she saw Tucker get into his car and "assumed" he left.

{¶19} Finally, the court concluded that D.R.'s identification was suspect because although she identified Tucker from the flier photograph, she could not identify Tucker from a more recent photograph that she referenced in her affidavit. The trial court, therefore, denied Tucker's petition to set aside or vacate judgment of conviction and motion for new trial.

## Scope of Evidentiary Hearing

{¶20} In his first assigned error, Tucker argues that the trial court erred by limiting the evidentiary hearing to D.R.'s testimony. Tucker contends our remand was more expansive in *Tucker* III because we found that D.R.'s testimony was corroborated by the "arguable" recantation of the two material witnesses at trial, Beal and Fussell; therefore, the trial court should have considered evidence that corroborated D.R.'s affidavit.

{¶21} When the trial court considered the scope of the evidentiary hearing, it could not ignore this court's decision in *Tucker* IV. Although *Tucker* III relied on the fact that the only two eyewitnesses to the crime "arguably" recanted, *Tucker* IV completely removed any reliance by the trial court on the possible recantation of the two witnesses when considering D.R.'s affidavit. Thus, although this court considered Beal's and Fussell's recantations when finding the court erred by not conducting an evidentiary

hearing regarding D.R.'s affidavit, these considerations were eliminated by our decision in *Tucker* IV.

{¶22} As we stated, Tucker's counsel conducted extensive discovery after the remand in *Tucker* III. He recanvassed the neighborhood of the bar almost eight years after the shooting and re-interviewed witnesses; he took a polygraph test; and obtained an expert witness to refute Beal's testimony. The discovery broadened the scope of the evidentiary hearing to include all issues as to Tucker's innocence and was not limited to D.R.'s affidavit.

{¶23} Moreover, as the trial court held, the motions containing the additional evidence were untimely filed and barred by res judicata. His motion for a new trial and petition for postconviction relief based on the affidavit of John Blue were filed on November 18, 2009, six years after Tucker's conviction. The supplemental motions to these motions were filed several months prior to the hearing, almost nine years after his conviction.

{¶24} Pursuant to R.C. 2953.23(A), a court may not entertain an untimely petition unless defendant initially demonstrates either (1) he was unavoidably prevented from discovering facts necessary for the claim for relief, or (2) the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in defendant's situation. R.C. 2953.23(A)(1)(a).

{¶25} Likewise, Crim.R. 33(B) provides that motions for a new trial on account of newly-discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered or from the trial court's decision unless "it is made to

appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely." Thus, an untimely motion for new trial based on newly discovered evidence must show, by clear and convincing proof, that the defendant was "unavoidably prevented" from discovering the new evidence. *State v. Fortson*, 8th Dist. No. 82545, 2003-Ohio-5387, ¶ 10. Thus, both rules required Tucker to show he was unavoidably prevented from discovering the following evidence:

**Joseph Fussell**

{¶26} Tucker attempted to present a more detailed affidavit by Fussell recanting his testimony. However, Tucker had already attempted to raise Fussell's recantation in his prior petition and motion for new trial, which this court in *Tucker* IV held was untimely filed. Tucker's refiling of Fussell's affidavit does not rectify the timeliness problem because Tucker has failed to show he was unavoidably prevented from discovering the facts in Fussell's new affidavit. Moreover, because Fussell's recantation had been raised and considered in *Tucker* IV, res judicata bars Tucker's attempt to again raise it.

**Keysha Carter and Khaalis Miller**

{¶27} Tucker submitted the affidavits of his girlfriend, Keysha Carter and Fussell's cousin, Khaalis Miller, in an attempt to bolster Fussell's affidavit. However, as we stated, because we have already determined that Fussell's affidavit was untimely, the trial court correctly excluded this testimony that was barred by res judicata. Moreover, Fussell testified at trial that he was with his cousin Khaalis Miller at the time of the shooting; therefore, counsel could have called Miller for questioning at trial.

**John Blue**

{¶28} Tucker sought to present the affidavit of John Blue, a known drug addict with a lengthy felony record. In his affidavit, Blue stated he did not know the victim or Tucker. He averred that he saw two men shoot the victim.

{¶29} Blue was a witness that Tucker was aware of at the time of trial as indicated by the fact his attorney asked Detective Marche about Blue. Blue was also listed on the detective's area canvass list as one of the witnesses. The list contains Blue's address and social security number and states that Blue told detectives, "he just heard several shots and a vehicle screech off." At trial, Detective Marche testified he provided a copy of the area canvass list to defense counsel. Therefore, Tucker has failed to show he was unavoidably prevented from discovering the facts contained in Blue's affidavit. Tucker's delay in obtaining an affidavit from a known possible witness does not provide grounds that he was unavoidably prevented from obtaining the evidence. *State v. Muntaser*, 8th Dist. No. 84951, 2005-Ohio-130.

**Arthur Storey**

{¶30} Tucker sought to present the affidavit by Arthur Storey, who was an inmate with Tucker. Storey stated that he was at the bar that night to conduct a drug deal. He said he saw a "dark-skinned man pulled out a black gun. * * * He was about 6' 3"/6'4" heavy set with corn rows (braids) with a black hoodie sweat shirt." He claimed the man was with a shorter man, with dark skin, a beard, and braids. He stated the two men were arguing with a third man. When he saw the gun, he ran around the corner and heard gunshots seconds later. He stated he knew Tucker, and none of the men he saw was

Tucker. He claimed he did not give a statement to police the night of the murder because he was in possession of drugs.

{¶31} The court did not err in discounting Storey's affidavit because it lacks credibility. Storey admitted he was approached by Tucker while in prison to provide the affidavit. Moreover, the affidavit was obtained one day after this court decided in *Tucker IV* that Fussell's recantation could not be considered. *See State v. Smith*, 2d Dist. No. 23945, 2011-Ohio-2189, ¶ 20-21 (filing of affidavit 22 days after Ohio Supreme Court affirmed conviction is suspiciously timed because it was very unlikely the defendant would find new evidence shortly after the Supreme Court affirmed the conviction.)

{¶32} Moreover, to prevail on a motion for new trial based upon newly discovered evidence, a defendant must show that the new evidence: (1) discloses a strong probability that the result of the trial would be different if a new trial were granted; (2) has been discovered since the trial; (3) is such as could not have been discovered before the trial through the exercise of due diligence; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence. *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947). Here, Storey admitted that he did not actually see the shooting because he ran around the corner when he saw a gun. Also, because Beal testified that she saw Tucker shoot Austin, Storey's affidavit merely contradicts Beal's testimony.

**Joseph McLemore**

{¶33} Tucker sought to present the affidavit of attorney Paul Kuzmins, who was assigned to represent Tucker at the evidentiary hearing. According to attorney Kuzmins's

affidavit, he discovered McLemore while canvassing the neighborhood for witnesses prior to the April 2012 hearing. Joseph McLemore told him (1) he was the bartender the night of the murder; (2) he witnessed the shooting; (3) saw the eventual shooter leave the bar and through the bar window, saw him walk to a car across the street to retrieve something from the trunk; (4) saw the man return to the front of the bar and shoot Austin; (5) that he was taken to police station where he identified another man as the shooter from a mug book; and, (6) that he did not personally know the shooter but described him as "brown-skinned" and taller than the victim.

{¶34} In his motion to admit McLemore's affidavit, Tucker maintained that the state's failure to reveal exonerating evidence violated the dictates of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We disagree a *Brady* violation occurred. A *Brady* violation involves the post-trial discovery of information that was known to the prosecution, but unknown to the defense. *State v. Wickline*, 50 Ohio St.3d 114, 116, 552 N.E.2d 913 (1990), citing *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In *Wickline*, the alleged exculpatory records were presented during the trial; therefore, no *Brady* violation occurred. *Wickline* at 116.

{¶35} Likewise, here Detective Marche testified at trial that he spoke to the bartender, Joseph "MacLimore."[4] According to the detective, the bartender was very reluctant to say anything, which was the case with all the witnesses who the detective surmised were afraid of retaliation. The detective showed the bartender photographs of

---

[4]The spelling is different than how attorney Kuzmins spelled the name, but there is no doubt it was the same person given the close spelling and the fact McLemore was the bartender that night.

both Tucker and Austin, and McLemore only said that he saw both of the men in the bar but was not aware of when they left. The detective asked him about "everybody that was in the bar" and received no useful answers. The canvass list also stated that McLemore only told the canvassing officer that he heard four shots.[5] Moreover, this canvass list was provided to defense counsel prior to trial. Thus, because counsel was aware of McLemore both before and during trial, the state did not commit a *Brady* violation. Counsel's awareness of McLemore as a witness also supports the trial court's refusal to consider evidence that could have been obtained prior to the trial with due diligence.

{¶36} Additionally, attorney Kuzmins's affidavit consists of hearsay because suspiciously, Tucker failed to provide an affidavit from McLemore. His failure to provide an affidavit indicates McLemore may not have been truthful with attorney Kuzmins. *State v. Calhoun*, 86 Ohio St.3d 279, 285, 1999-Ohio-102, 714 N.E.2d 905 (one of the considerations in granting postconviction relief is whether the affidavit relies upon hearsay).

**Polygraph Test**

{¶37} Tucker also attempted to submit the results of his polygraph test taken over seven years after the murder occurred. In Ohio, the results of polygraph examinations are generally inadmissible as evidence unless all parties so stipulate. *See State v. Souel*, 53 Ohio St.2d 123, 372 N.E.2d 1318 (1978), syllabus; *State v. Davis*, 62 Ohio St.3d 326, 341, 581 N.E.2d 1362 (1991). Here, there is no joint stipulation. More importantly, however,

---

[5] McLemore's name is spelled differently in the canvass list. He is listed as "Joe McLemory," which appears to be the phonetic spelling of his name.

is the fact that Tucker has failed to show that he was prevented from taking a polygraph prior to trial. Thus, he has failed to demonstrate he was unavoidably prevented from discovering this information.

**Professor Maria S. Aragoza, Ph.D.**

**{¶38}** Lastly, Tucker attempted to introduce the expert opinion of Professor Aragoza, who stated that in her opinion, Nikia Beal's memory was tainted. Tucker has failed to demonstrate that he was unavoidably prevented from the discovery of this evidence prior to trial.

**{¶39}** Accordingly, we conclude the trial court did not err by refusing to consider the above additional evidence. Allowing such evidence would have impermissibly broadened the scope of the hearing to the consideration of evidence that was available with due diligence at trial. Tucker's first assigned error is overruled.

## Denial of Motion for a New Trial

**{¶40}** In his second assigned error, Tucker argues the trial court erred by denying his 2007 petition for postconviction relief and motion for a new trial because even if D.R.'s testimony was considered in isolation, she was a credible, neutral witness.

**{¶41}** As we stated above, the decision to grant or deny a motion for a new trial or petition for postconviction relief on the basis of newly discovered evidence is within the sound discretion of the trial court and, absent an abuse of discretion, that decision will not be disturbed. Also, once the trial court conducts an evidentiary hearing relative to an appellant's postconviction petition, a reviewing court should not overrule its findings if they are supported by competent and credible evidence. *State v. Gondor*, 112 Ohio St.3d

377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58, *accord State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 45; *State v. Mitchell*, 53 Ohio App.3d 117, 119, 559 N.E.2d 1370 (8th Dist.1988).

{¶42} Because of Beal's testimony, D.R.'s testimony does not provide a strong probability that the result will change if a new trial is granted. *Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947). Beal was standing right next to the victim when he was shot; she stated she looked at the shooter as he shot the victim; and she immediately recognized him as the man that was staring at her inside the bar. In fact, Tucker admitted at trial to having seen Beal inside the bar. Also, D.R.'s testimony simply contradicts Beal's testimony; therefore, it does not support the granting of a new trial. *Id*. Lastly, two other witnesses testified that D.R. was inside the bar at the time of the shooting. Thus, her testimony is merely cumulative.

{¶43} We also conclude the trial court did not err by finding D.R. to be an incredible witness. As the court in *Gondor* held, the judge presiding "at a postconviction hearing is in a totally different position from the appellate judges. The postconviction judge sees and hears the live postconviction witnesses, and he or she is therefore in a much better position to weigh their credibility than are the appellate judges." *Gondor*, at ¶ 55.

{¶44} Here, the court concluded that D.R. was not credible because at the hearing, she could positively identify Tucker from the photo on the flier but not from another photograph that Tucker had attached to his petition for postconviction relief that she referenced in her affidavit. She also stated that Tucker was wearing a "Chief Wahoo" jacket, but the evidence showed he was wearing a "blue Phat Pharm" jacket. D.R. also

stated in her affidavit that she saw Tucker leave with friends, but at the hearing she stated, "she assumed" he left with friends.

{¶45} Based on the foregoing, we affirm the trial court's decision to deny Tucker's postconviction petition and motion for a new trial because the trial court's finding D.R. to be an incredible witness is supported by competent and credible evidence. Accordingly, Tucker's second assigned error is overruled.

{¶46} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON,   JUDGE

MELODY J. STEWART, A.J., and
MARY EILEEN KILBANE, J., CONCUR