[Cite as *State v. Johnson*, 2022-Ohio-78.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | |
|---|---|
| STATE OF OHIO, | : |
| Plaintiff-Appellee, | : |
| | No. 110205 |
| v. | : |
| EDWARDLEE JOHNSON, | : |
| Defendant-Appellant. | : |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 13, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-12-564315-B

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney, *for appellee.*

Kimberly Kendall Corral, *for appellant.*

LISA B. FORBES, J.:

{¶ 1} Appellant Edwardlee Johnson ("Johnson") appeals the trial court's order denying his petition for postconviction relief. After reviewing the facts of the case and pertinent law, we affirm.

## I.  Fact and Procedural History

**{¶ 1}**  Johnson was convicted of murder, felonious assault, having weapons while under disability, firearm specifications, notice of prior conviction, and repeat violent offender specifications for the shooting of Carlos Coates ("Coates") following a five-day trial that began on March 11, 2013.

**{¶ 2}**  Johnson appealed his convictions, and the transcript of proceedings was filed with the court of appeals on July 11, 2013.  This court affirmed Johnson's convictions.  For a full recitation of the facts and procedural history of the case, *see State v. Johnson*, 8th Dist. Cuyahoga No. 99715, 2014-Ohio-2638.

**{¶ 3}**  On October 27, 2020, Johnson filed a petition seeking to vacate his convictions for Coates's murder.  Johnson's petition argued that he has newly discovered evidence that he was unavoidably prevented from discovering within 365 days of the trial transcript being filed in his direct appeal.

**{¶ 4}**  The trial court denied Johnson's petition without a hearing finding that it was untimely and did not qualify for the exception to the timeliness requirement.  It is from this denial that Johnson appeals.

## II.  Trial Testimony

**{¶ 5}**  At trial five eyewitnesses testified to the events surrounding Coates's murder: Dione Green ("Green"), Tamera Coleman ("Coleman"), Miekal Gale ("Gale"), Leon Howard ("Howard"), and Joseph Fussell ("Fussell").

**{¶ 6}**  Testimony from those five witnesses demonstrated that on June 11, 2012, Coates, Green, Coleman, and Howard met at Green's house at approximately

ten p.m. and planned to "go out to have a nice time * * *."  The four of them were "drinking" and "not really" getting along when an altercation broke out between Green and Coleman.  Coates got involved, pushing Coleman against a wall.  Coleman and Coates began hitting each other, prompting Coleman to say she was going to call her "brother" since Coates wanted to "fight like a b***h."  Howard broke up the fight between Coleman and Coates and suggested they all go to a bar.

{¶ 7}  Coleman, Green, and Howard went to the bar, while Coates stayed at the house to watch Coleman's and Green's children.  Both Green and Howard overheard Coleman on the phone several times throughout the night describing the calls as "angry and hostile."  Green testified that while at the bar, Coleman called Johnson and Gale and asked them to pick her up from Green's house.

{¶ 8}  Coleman, Green, and Howard left the bar together and met up with Gale and Fussell at a gas station.  Coleman got into a car with Gale, telling him about what happened at Green's house and that she had asked her "brother" to come teach Coates a lesson.  Gale identified Johnson as Coleman's "brother."

{¶ 9}  Coleman left the gas station with Gale, while Howard, Green, and Fussell went "up the street" to smoke PCP together.  After they finished, Green asked Fussell to come back to her house.  Fussell agreed.  Fussell left the gas station to get his work truck and meet everyone back at Green's house.  Green and Howard arrived at Green's house together, followed by Fussell arriving in his work truck.

{¶ 10} When Fussell pulled up to the house, Coates, who was outside, told him to "watch out" for a car across the street that had been parked but from which

no one had gotten out. Fussell proceeded to park his truck on the road. At that point, Coleman arrived with Gale. According to Fussell, Coleman immediately began fighting with Green on the side of his truck. Simultaneously, Gale started arguing with Coates by the porch. As Fussell was exiting his truck, he saw a man cocking a gun walking beside the truck. The man then tucked the gun away and ran between the houses. A few minutes later, Fussell heard a gunshot.

{¶ 11} Howard was standing near the fight between Coates and Gale when he noticed a man in a hoodie walking towards the house. That man walked up to Coates, pulled off his hood, and asked, "[Y]ou remember me?" Gale and Howard both identified the man as Johnson. Howard's phone started ringing, and when he went to grab it, Johnson pulled out a gun and pulled the trigger. The gun jammed. Johnson ran into nearby bushes.

{¶ 12} Coates and Gale began to physically fight, leading to Coates stabbing Gale, and Gale falling off the porch. At this point, Johnson emerged from the bushes, raised his gun, and shot Coates. Coleman went into the house, grabbed her children, and left with Gale and Johnson in Johnson's car.

## III. Law and Analysis

{¶ 13} Johnson raises three assignments of error for our review.

> The trial court erred in finding that the [timeliness] exceptions set forth in Ohio Revised Code Section 2953.23 do not apply.

> The trial court abused its discretion in denying [Johnson's] petition to vacate convictions pursuant to Ohio Revised Code Sections 2953.21 and 2953.23 based on state's [withholding] of favorable, material evidence in violation of *Brady v. Maryland*.

> The trial court abused its discretion in failing to hold an evidentiary hearing on [Johnson's] petition to vacate convictions pursuant to Ohio Revised Code Sections 2953.21 and 2953.23 based on state's [withholding] of favorable, material evidence in violation of *Brady v. Maryland*.

For ease of analysis, we address all three assignments of error together.

**{¶ 14}** Postconviction relief is a civil collateral attack on a criminal judgment. *State v. Curry*, 8th Dist. Cuyahoga No. 108088, 2019-Ohio-5338, ¶ 12. "Postconviction review is not a constitutional right but, rather, is a narrow remedy that affords a petitioner no rights beyond those granted by statute." *Id.*, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281-282, 714 N.E.2d 905 (1999). R.C. 2953.21 allows convicted criminal defendants to file a petition requesting the court to vacate its judgment on the grounds that there was a denial or infringement on his or her rights rendering the judgment void or voidable. R.C. 2953.21(A)(1)(a)(i). That petition must be filed no later than 365 days after the transcript being filed in his or her direct appeal, or if no appeal is filed, no later than 365 days "after the expiration of the time for filing the appeal." R.C. 2953.21(A)(2)(a).

**{¶ 15}** However, a convicted defendant may file a petition for postconviction relief after the 365-day deadline if he or she meets the requirements of R.C. 2953.23(A). Johnson argues that he meets the timeliness exception under 2953.23(A)(1), which states:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period

prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

{¶ 16} Typically, a trial court's decision on whether to grant postconviction relief is reviewed for an abuse of discretion. *See State v. Lawrence*, 8th Dist. Cuyahoga No. 109951, 2021-Ohio-2105, ¶ 12. However, whether a trial court had subject matter jurisdiction to entertain an untimely postconviction relief petition is a question of law that is reviewed de novo. *State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 24.

{¶ 17} Johnson admits that his petition for postconviction relief was untimely pursuant to R.C. 2953.21's 365-day time limit. However, he argues that his petition qualifies for the R.C. 2953.23 exception to the 365-day time limit. Specifically, Johnson argues that he was unavoidably prevented from discovering affidavits from one of the state's witnesses — Fussell — in which the witness admits to committing perjury in a separate case, *State v. Tucker*, Cuyahoga C.P. No. CR-03-437731-ZA. According to Johnson, but for the state's alleged error in not producing these affidavits prior to trial, the outcome of his trial would have been different. We disagree.

{¶ 18} We look to the second prong of R.C. 2953.23(A)(1) first and acknowledge that had Johnson been made aware of Fussell's affidavits in *Tucker*, he may have been able to impeach Fussell at trial. However, he has not established "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the [him] guilty * * *." R.C. 2953.23(A)(1)(b).

{¶ 19} Johnson alleges that Fussell first recanted via a signed affidavit in 2004. This court mentioned that recantation in a 2008 opinion. *See State v. Tucker*, 8th Dist. Cuyahoga No. 90799, 2008-Ohio-5746, ¶ 11. Further, Johnson states that on February 2, 2012, Fussell filed a new affidavit elaborating on his recanted testimony. Fussell was declared a material witness in Johnson's trial on December 24, 2012, and the case proceeded to trial on March 11, 2013.

{¶ 20} While Fussell was one of five eyewitnesses to the events the night of Coates's murder, he never identified Johnson as the shooter. Fussell's testimony can be summarized as him seeing a man with a lighter complexion than his own walk towards Green's house with a gun before Coates was shot. Then, Fussell heard a gunshot, which prompted him to duck down in his truck. Fussell explained that, at that moment, he was afraid the gunman would shoot him. Once Coleman left with Gale and her children, Fussell exited his truck and went to see if Coates was okay. At no point in the trial did Fussell ever identify Johnson as the shooter.

{¶ 21} While the affidavit of Fussell in the *Tucker* case may have allowed Johnson to impeach Fussell at trial, it would not have negated the plethora of

testimony presented at trial by other witnesses who not only put Johnson at the scene of the crime but also identified Johnson as the gunman. Coleman testified that she called Johnson and asked him to pick her up at Green's house, where Coates was murdered. Green and Howard both testified that Coleman had called Johnson, angry about the altercation between her and Coates, asking him to come to Green's house. Both Howard and Gale testified that they saw the man approach Green's house with a gun, and they both identified Johnson as that man in court.

{¶ 22} Accordingly, Johnson has not demonstrated by clear and convincing evidence that the outcome of trial would have been different but for the state not turning over Fussell's affidavits from the *Tucker* case.

{¶ 23} Because convicted criminal defendants must meet both prongs of R.C. 2953.23(A)(1) to qualify for the exception to the 365-day time limit for requesting postconviction relief, we need not address the first prong of the statute. Johnson has not established the necessary second prong, that the outcome of his trial would have been different but for the state's alleged constitutional violation. *See State v. Morris*, 2d Dist. Montgomery No. 27875, 2018-Ohio-4527, ¶ 25. Nonetheless, we note that Johnson similarly cannot demonstrate that he was unavoidably prevented from discovering the facts on which he relies.

{¶ 24} "The phrase 'unavoidably prevented' from discovery of facts warranting postconviction relief means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence." *State v. Harrison*, 8th Dist. Cuyahoga No. 105909, 2018-Ohio-1396, ¶ 6, quoting *State v. Short*, 8th

Dist. Cuyahoga No. 82246, 2003-Ohio-3538, ¶ 9. This court has previously held that if something is stored within the public record, a defendant cannot be unavoidably prevented from discovering it. *State v. Roberts*, 8th Dist. Cuyahoga No. 95533, 2011-Ohio-2534, ¶ 19. A court's docket is public record. *Thomas v. ARM Food, Inc.*, 8th Dist. Cuyahoga No. 82863, 2003-Ohio-6925, ¶ 9. References to Fussell's recanted testimony via affidavit have been mentioned in this court's docket since at least 2008. *See Tucker*, 8th Dist. Cuyahoga No. 90799, 2008-Ohio-5746, at ¶ 10-11; *State v. Tucker*, 8th Dist. Cuyahoga No. 95556, 2011-Ohio-4092, ¶ 4; *State v. Tucker*, 8th Dist. Cuyahoga No. 98685, 2013-Ohio-2527, ¶ 26. Because Fussell's affidavits have been mentioned in appellate court opinions that are part of the public record, Johnson was not unavoidably prevented from discovering the fact that the affidavits existed and that Fussell recanted testimony in that prior case. Fussell's recanted testimony was discussed in publicly available court records as early as 2008. Johnson did not go to trial for Coates's murder until 2013.

{¶ 25} For the foregoing reasons, Johnson's first, second, and third assignments of error are overruled. Because Johnson did not qualify for the timeliness exception in R.C. 2953.23(A)(1), the trial court was without jurisdiction to entertain the merits of his postconviction relief petition argued in his second and third assignments of error. *See Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, at ¶ 24.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
MICHELLE J. SHEEHAN, J., CONCUR