[Cite as *IPlangroup v. Etayem*, 2022-Ohio-822.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IPLANGROUP AGENT FOR
CUSTODIAN FBO TARSEM GARG,
IRA,

       Plaintiff-Appellee,       :        No. 110686

v.

YASER ETAYEM, ET AL.,

       Defendants-Appellants.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 17, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-932265

---

### *Appearances:*

The Lindner Law Firm, L.L.C., and Daniel F. Lindner, *for appellee.*

Bower Stevenson, L.L.C., and Justin D. Stevenson, *for appellant.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendant-appellant, Yaser Etayem ("Etayem"), appeals from the trial court's judgment granting summary judgment to plaintiff-appellee, IPlangroup

Agent for Custodian FBO Tarsem Garg, IRA ("IPlangroup").  Finding no merit to the appeal, we affirm.

## I.    Facts and Procedural Background

{¶ 2}    This case arises out of an uncompleted purchase of commercial real estate.  IPlangroup filed suit against Etayem for breach of contract, alleging that Etayem had entered into an agreement to purchase commercial property from IPlangroup but breached the contract by failing to close on the property.  IPlangroup also sued Fidelity National Title Insurance Company ("Fidelity"), seeking a declaratory judgment that the $10,000 in earnest money funds paid by Etayem upon signing the contract and held by Fidelity should be paid to IPlangroup.  Fidelity subsequently deposited the earnest monies with the clerk of courts and was dismissed with prejudice from the case.

{¶ 3}    IPlangroup then filed a motion for summary judgment.  In its motion, IPlangroup asserted that there were no genuine issues of material fact that Etayem had breached the contract to purchase commercial property from IPlangroup, causing it $25,000 in damages.  IPlangroup supported its motion with a copy of the purchase agreement between it and Etayem.  The agreement demonstrated that IPlangroup was the owner of commercial property (the "property") located at 3308 Archwood Avenue in Cleveland, Ohio, and on September 18, 2019, Etayem offered to purchase the property for $600,000.  IPlangroup accepted Etayem's offer on September 21, 2019.  Pursuant to an addendum to the contract executed on October 29, 2019, the purchase price was later changed to $640,000, of which IPlangroup

agreed to give back $60,000 towards Etayem's closing costs and down payment, for a net purchase price of $580,000. The addendum also specified that the transaction was to close on or before November 1, 2019.

{¶ 4} With respect to financing, the contract provided that Fortis Capital Management Group was to be the lender, and that

> BUYER shall make a written application for the above mortgage loan, order the appraisal and provide verification to SELLER of said application and order of appraisal within 10 days and shall obtain a commitment for that loan no later than 4 days after acceptance of this offer. If first mortgage financing cannot be obtained despite BUYER good faith efforts, Russell Real Estate Services[1] reserves the right to arrange acceptable financing. If first mortgage financing cannot be obtained then this Agreement shall be null and void. Upon signing of a mutual release by SELLER and BUYER, the earnest money deposit shall be returned to the BUYER without any further liability of either party to the other or to the Brokers and their agents.

{¶ 5} With regard to inspections of the property, the contract specified that Etayem agreed to a general property inspection by a professional inspector within nine days of the contract date, i.e., by September 30, 2019, and any other inspections deemed necessary by the general property inspection within ten days after the contract date. Etayem waived all other property inspections.

{¶ 6} The contract attached to IPlangroup's motion for summary judgment reflected that on October 9, 2019, the parties executed an addendum to the contract that allowed Etayem an untimely inspection of the property but stated that the

---

[1] IPlangroup's broker for the transaction.

"[i]nspection is for buyer's knowledge and reference only. We are out of the contingency period."

{¶ 7} IPlangroup also supported its motion for summary judgment with the affidavit of Anup Garg, its agent for the sale of the property. Garg's affidavit reiterated the terms of the contract and addendums as set forth above, and averred that in September 2019, Etayem deposited $10,000 in earnest monies to Fidelity as required by the contract. Garg further averred that although the contract was to close on or before November 1, 2019, "Etayem never notified me or any representative of [IPlangroup] or [Fidelity] that he did not desire to close the purchase of the property. He just never showed up for the closing, nor did he ever return to the transaction."

{¶ 8} Garg further averred that he put the property back on the market after Etayem failed to complete the purchase and that the property eventually sold in April 2020 for $555,000, a reduction of $25,000 from the original sales price to Etayem. A copy of the contract with the new buyer was attached as an exhibit to Garg's affidavit.

{¶ 9} Etayem filed a brief in opposition to IPlangroup's motion for summary judgment. In his brief, Etayem asserted that the purchase agreement was conditioned upon him securing financing, which he was unable to obtain. He alleged that after executing the addendum allowing him an untimely inspection of the property, he had the property inspected by a professional inspector who opined that there were extensive electrical issues with the property and that it needed a new

roof. Etayem asserted that in light of the roof and electrical issues, he was unable to obtain insurance on the property and without insurance, lenders would not commit to financing the deal.

{¶ 10} Etayem alleged that after he was denied coverage by multiple companies, he contacted IPangroup's insurance representative, Ashley Marrie, an insurance agent at Glazier Insurance Agency, Inc. Etayem asserted that although Marrie offered a quote for full coverage of the property, her quote was based on incorrect information about the age of the roof. Etayem explained, quoting from his deposition testimony (pages of which were attached to his brief in opposition), that he did not accept the offer of insurance because Marrie thought the age of the roof was 15 years, when the roof was actually over 35 years old, and he would "not get [himself] in trouble making fraud with the insurance, or lying."

{¶ 11} Etayem asserted that his real estate agent, Michael Pasadyn, then contacted IPlangroup's real estate agent, Chris Zurawski, and told him that Etayem could not proceed with the transaction because he could not obtain insurance and was therefore unable to secure financing. Etayem alleged that Pasadyn sent Zurawski a mutual release, as provided for under the financing term of the contract, but that he never heard anything more from IPlangroup until this lawsuit was filed.

{¶ 12} Etayem argued that the trial court should deny summary judgment because the contract was not enforceable. He contended that under the financing term of the contract, obtaining financing was a condition precedent that had to be satisfied before the contract became enforceable. He argued that he attempted in

good faith to secure financing but was unable to do so and, therefore, the contract was null and void. At a minimum, he asserted, there were genuine issues of material fact as to whether the contract was null and void under the financing term.

{¶ 13} He argued further that there were genuine issues of material fact as to the scope of the inspection addendum that precluded summary judgment, i.e., whether it waived all contingencies under the contract, including the financing contingency, or only the inspection contingency.

{¶ 14} Etayem supported his brief with Pasadyn's affidavit. Pasadyn averred that he was Etayem's real estate agent with respect to the purchase of the property and that he had "personal knowledge" of the matters discussed in his affidavit. He further averred:

> 6. In September 2019, Mr. Etayem and IPlangroup ("IPlan") executed a purchase contract ("Contract") for the sale of the real property at issue in this matter.
>
> 7. An accurate copy of the Contract is attached to Plaintiff's Motion for Summary Judgment as Exhibit 1. (See Russell Real Estate Services Commercial purchase Agreement – Plaintiff's MSJ Exhibit 1).
>
> 8. The Contract contained a financing contingency which states that "If first mortgage financing cannot be obtained this Agreement shall be null and void" which, as a standard provision in such contracts, and in my experience as a real estate agent, means that if a buyer is unable to secure financing, for any reason, then the buyer is able to back out of such a contract.
>
> 9. After executing the Contract, Mr. Etayem sought financing with Fortis Capital Management Group and Silverhill Funding.
>
> 10. As with all first mortgage financing, both lenders required Mr. Etayem to secure insurance coverage on the property in order to providing [sic] the financing.

11.  Mr. Etayem sought to obtain insurance coverage from a number of agents and insurers, but had difficulty finding an insurer who would provide legitimate coverage on the property.

12.  During the process, I communicated this to Christopher Zurawski, the real estate agent for IPlan.  (See Defendant's Opposition Exhibit D – text message with Zurawski).

13.  Before issuing a quote describing the terms of coverage, the insurance companies asked Mr. Etayem for an inspection report of the property.

14.  In October 2019, the parties executed an Inspection Addendum to the Contact which gave Mr. Etayem the right to enter and have inspected the property, but that also specifically acknowledged the inspection contingency had ended.  (See Defendant's Opposition Exhibit C – Inspection Addendum).

15.  The intent of this Inspection Addendum was not to waive any and all contingencies in the Contract, but to obtain IPlan's consent to inspect the property even though the traditional inspection period had passed, and to acknowledge that Mr. Etayem would not attempt to cancel the Contract based solely on the results of such inspection.

16.   Dan Gibson, a home inspector who was employed by Detailed Home Inspections at the time, inspected the property and determined the roof and fuse electrical system needed [to be] replaced and repaired.

17.  Mr. Etayem accepted the property as is because he was outside of the window to request repairs under the inspection contingency in the Contract.

18.  The insurance representative Mr. Etayem was working with when the inspection was conducted, Joe Race, denied coverage because of the roof and electrical issues unless Mr. Etayem paid to have the roof and electrical system repaired.

19.  Mr. Etaym then contacted contractors to find out how expensive the repairs would be and how long it would take to make them.  The estimated costs of repair were around $100,000.00, which Mr. Etayem said he could not afford without financing and that was if any of the contractors could fit them in to make the repairs.

20.  The second insurance representative Mr. Etayem worked with was Nate Moog, an insurance broker, who used his network of providers to try and find a policy that Mr. Etayem could afford and which would satisfy his lender's coverage requirements.

21.  Nate Moog eventually told Mr. Etayem the same thing:  that Mr. Etayem must either fix the roof and electrical issues before closing or none of the insurance providers he brokers for will provide coverage for the property.

22.  In [an] attempt to facilitate and close the transaction, I reached out to Plaintiff's agent to obtain information of Plaintiff's insurance provider, with hope Mr. Etayem could transfer the policy Plaintiff had in place to himself post-closing.

23.  As Mr. Etayem explained it to me, the insurance advisor Mr. Etayem spoke with at Glazier Insurance Agency, Inc., Ashley Marrie, gave lender a quote for coverage but told Mr. Etayem that he had to fix the roof and electrical issues post-closing, and that Glazier will send an independent inspector to ensure compliance at some point after closing.

24.  Despite Mr. Etayem's request for an exact time frame by which the repairs needed to be complete, Glazier would not guarantee when the independent inspector would be out to view the property and reassess coverage.

25.  It was my understanding that, during conversations with Mr. Etayem, Ashley repeatedly asserted the roof was only 15 years old, and maintained this assertion even after Mr. Etayem explained the inspection report indicated the roof was 35 years old.

26.  It was therefore also my understanding that Mr. Etayem was not able to procure legitimate insurance to cover the Property – the only insurer that was willing to provide a quote did so based on incorrect information.

27.  At the time I thought it seemed strange that Plaintiff's provider was willing to insure the property post-closing when so many other companies denied coverage unless he repaired the roof and electrical before closing.

28. Mr. Etayem therefore ultimately determined he must inform Plaintiff that Mr. Etayem could not proceed with the purchase and wanted his earnest money back.

29. On November 5, 2019, I called Chris Zurawski, and informed Mr. Zurawski that Mr. Etayem cannot get insurance coverage for the property and will not proceed with the purchase, and that Mr. Etayem wants his earnest money back. Chris said he would take the information to Plaintiff.

30. Also on November 5, I sent Chris a mutual release, which was required by the financing contingency in the Contract because Mr. Etayem was not going to purchase [the] property due to lack of financing, via the dot loop portal. Chris viewed the release on November 6, but did not reply. (See Defendant's Opposition Exhibit D – Inspection Addendum).

31. After I informed Chris that we could not proceed with the purchase, I did not hear back from Chris until January 2020, when I learned that IPlan planned to sue Mr. Etayem for breach of contract.

{¶ 15} IPlangroup filed a reply to Etayem's brief in opposition. IPlangroup argued that Pasadyn's affidavit was not based on his firsthand knowledge about the matters set forth in his affidavit and that the court could therefore not consider it (essentially asking the court to strike it).

{¶ 16} IPlangroup argued further that Etayem was "attempting to manufacture an issue of fact" by falsely asserting that he could not obtain financing due to his inability to obtain casualty insurance for the property. IPlangroup asserted that Etayem's claim was "entirely untrue" and that insurance was available for the property from multiple sources. Attached to IPlangroup's reply was the affidavit of Ashley Marrie, an insurance agent with Glazier Insurance Agency. In her affidavit, Marrie averred that she successfully found an insurer, State Auto, that was able to provide insurance for Etayem on the property despite its existing fuse and

roof issues. A copy of Marrie's October 28, 2019 email to Etayem that included a copy of State Auto's quote and set forth the yearly cost and deductible for the State Auto insurance was attached to her affidavit. Marrie averred that she provided truthful information about the property to a number of carriers and that Etayem would have been able to obtain insurance from both the standard insurance market as well as excess and surplus lines if he was not comfortable with the proposed coverage. She further averred that no insurance inspection was required prior to binding insurance coverage for the property and that she had never spoken with Pasadyn regarding insurance coverage for the property.

{¶ 17} The trial court granted IPlangroup's motion for summary judgment. In its judgment entry of its decision, the court first found that Pasadyn did not have firsthand knowledge of the matters to which he attested in his affidavit and, therefore, "the court cannot consider Mr. Pasadyn's affidavit to establish Defendant's argument that, because he was unable to obtain insurance coverage, he could not obtain financing." The court further found Etayem's arguments about his inability to obtain insurance and financing "unavailing." It stated:

> If Defendant had performed an inspection within the contingency period, and this inspection revealed these defects, the Contract terms delineated the rights and obligations of each party under these circumstances. Defendant cannot use the findings of an untimely inspection report to justify his failure to purchase the Property. The court finds that Defendant breached the Commercial Purchase Agreement entered into by the parties.

{¶ 18} Finding that IPlangroup was entitled to judgment as a matter of law, the trial court entered judgment against Etayem in the amount of $25,000 in

contract damages, plus statutory interest from November 1, 2019, and court costs. The court also ordered the clerk to release to IPlangroup the $10,000 in earnest monies Fidelity had deposited with the clerk. This appeal followed.

## II. Law and Analysis

### A. Standard of Review

{¶ 19} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate.

{¶ 20} Under Civ.R. 56(C), summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. The party moving for summary judgment has the initial burden of identifying specific facts in the record that demonstrate an entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 26 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate. If the moving party meets this burden, the nonmoving party has a reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

**B. Pasadyn's Affidavit**

{¶ 21} In his first assignment of error, Etayem contends that it was error for the trial court to conclude that Pasadyn did not have firsthand knowledge of the matters he attested to in his affidavit and to strike his affidavit when ruling on IPlangroup's motion for summary judgment.

{¶ 22} Motions to strike are within the trial court's broad discretion. *Wells Fargo Bank v. Smith*, 12th Dist. Brown No. CA2012-006, 2013-Ohio-855, ¶ 13. A court's ruling on a motion to strike will not be reversed absent an abuse of that discretion. *Rivera v. Challenge Fin. Investors Corp.*, 8th Dist. Cuyahoga No. 90904, 2008-Ohio-5748, ¶ 11. A decision constitutes an abuse of discretion when it is unreasonable, arbitrary, or unconscionable. *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 11.

{¶ 23} Civ.R. 56(E), which sets forth the requirements for affidavits submitted to support or oppose motions for summary judgment, states that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." "'Personal knowledge' is 'knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.'" *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 320, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 26, quoting *Black's Law Dictionary* 875 (7th Ed.Rev.1999). Thus, "the subject of a witness's testimony must have been perceived through one or more of the senses of the witness." *Id.*, quoting

*Weissenberger Ohio Evidence*, Section 602.1 at 213 (2002). A witness is incompetent to testify to any fact unless he or she possesses firsthand knowledge of that fact. *Id.* This is the same standard applied to lay witness testimony in a court of law. *Id.*

{¶ 24} Upon our review of Pasadyn's affidavit, we find that he clearly lacked the personal knowledge required by Civ.R. 56(E) to support the statements in his affidavit. With the exception of a few paragraphs that attest to Pasadyn's alleged communications with representatives of IPlangroup (paragraphs 12, 22, and 29-31), the entirety of Pasadyn's affidavit attests to what Etayem did, what Etayem was told by others, or what conclusions or determinations Etayem made and communicated to others, including to Pasadyn. Indeed, Pasadyn concedes in paragraph 23 that Etayem "explained" to him that Marrie gave him an insurance quote but told him he had to fix the roof and electrical issues post-closing, and in paragraph 26 that it was his "understanding" based on conversations with Etayem that the only insurer willing to provide insurance had incorrect information about the age of the roof. In short, Pasadyn did not perceive with one of his senses the facts he attested to in his affidavit and, thus, he did not have the personal knowledge required by Civ.R. 56(E) to support the statements in his affidavit.

{¶ 25} Etayem asserts that Pasadyn's mere assertion that his affidavit was based on firsthand knowledge was sufficient to allow the trial court to consider his affidavit. Admittedly, this court has held that "absent evidence to the contrary, an affiant's statement this his affidavit is based on personal knowledge will suffice to

meet the requirement of Civ.R. 56(E)." *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 20. But Pasadyn's affidavit itself contains the "evidence to the contrary" establishing that his affidavit was not based on personal knowledge. In his affidavit, Pasadyn does not attest to actions he took with regard to obtaining insurance for the property; he attests to what Etayem *told him* about Etayem's alleged attempts to obtain insurance and his "understanding" based on those conversations about Etayem's alleged inability to obtain insurance and, consequently, financing. Such testimony is obviously hearsay and not admissible. When ruling on a summary judgment motion, a court may consider only evidence that would be admissible at trial. *Whitt v. Wolfinger*, 4th Dist. Ross No. 14CA3455, 2015-Ohio-2726, ¶ 12.

{¶ 26} Etayem's assertion that the trial court improperly disregarded Pasadyn's affidavit because his personal knowledge "can be reasonably inferred" based on his position as Etayem's real estate agent during the transaction is likewise without merit. Ohio law recognizes that even where the affiant fails to state that the affidavit is based on personal knowledge, such personal knowledge may be inferred if the nature of the facts in the affidavit combined with the identity of the affiant creates a reasonable inference that the affiant has personal knowledge of the facts in the affidavit. *Freedom Mtge. Corp. v. Vitale*, 5th Dist. Tuscarawas No. 2019 AP 08 0037, 2014-Ohio-1549, ¶ 26; *Nationwide Mtge., L.L.C. v. Wagener*, 8th Dist. Cuyahoga No. 101280, 2015-Ohio-1289, ¶ 26.

{¶ 27} But "'personal knowledge' for purposes of a summary judgment affidavit is defined as knowledge of the truth in regard to a particular fact or allegation that does not depend on information or hearsay, i.e., it is knowledge that is original to the affiant." *Whitt* at ¶ 25, citing *Parker Fin. v. Matthew*, 4th Dist. Adams No. 97CA652, 1999 Ohio App. LEXIS 338 (Feb. 3, 1999) (affiant's knowledge was based upon information he received during telephone conversations and therefore was not based on personal knowledge), citing *Brannon v. Rinzler*, 77 Ohio App.3d 749, 603 N.E.2d 1049 (2d Dist.1991) (personal knowledge must be original and not depend on information or hearsay).

{¶ 28} As discussed above, Pasadyn's averments were based on information that Etayem told him, not on his own observations or involvement in events related to the contract. Thus, despite his position as Etayem's real estate agent, his averments were hearsay and not admissible.

{¶ 29} We recognize that several paragraphs of Pasadyn's affidavit contain averments relating to actions that he took in regard to the transaction. In paragraph 12, Pasadyn averred that he told IPlangroup's real estate agent that Etayem was having trouble finding an insurer for the property. In paragraph 22, he averred that he reached out to IPlangroup's agent to obtain contact information for IPlangroup's insurance provider. And in paragraphs 29-31, Pasadyn averred that he informed IPlangroup's real estate agent that Etayem would not purchase the property due to his inability to obtain insurance and financing. Pasadyn obviously had personal knowledge of these actions. But it is apparent from his affidavit that Pasadyn's

actions were the result of hearsay information provided to him from Etayem; they were not based on his own personal knowledge that Etayem could not obtain insurance or financing for the property. Accordingly, we conclude that the trial court did not abuse its discretion in excluding Pasadyn's entire affidavit. *See, e.g., Whitt,* 4th Dist. Ross No. 14CA3455, 2015-Ohio-2726 at ¶ 33 (trial court did not err in excluding entire affidavit where the only reasonable inference was that affiant's statements were based on hearsay statements of affiant's father). The first assignment of error is therefore overruled.

### III. No Genuine Issues of Material Fact

{¶ 30} In his second assignment of error, Etayem contends that the trial court erred in granting IPlangroup's motion for summary judgment because even without Pasadyn's affidavit, he presented sufficient evidence demonstrating there were issues of fact regarding his alleged inability to obtain insurance and hence financing for the property.

{¶ 31} Etayem first points us to pages from his deposition testimony that were attached to his brief in opposition to IPlangroup's summary judgment motion. He contends that his deposition testimony established that he faced difficulty obtaining insurance due to the age of the roof and electrical issues and that although IPlangroup obtained insurance from State Auto for the property, he believed the State Auto quote was based on false information about the age of the roof. He further contends that Marrie's affidavit, which was submitted with IPlangroup's reply brief, created issues of fact because it disputed his claim that the age of the roof

was a primary concern in obtaining insurance for the property and did not refute his claim that State Auto had incorrect information about the age of the roof. Thus, he contends this case involves a "he said/she said" scenario that should not have been resolved on summary judgment. We disagree.

{¶ 32} Civ.R. 56(C) provides an exclusive list of the materials a trial court may consider when deciding a motion for summary judgment. Those materials are the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. Nevertheless, before a deposition transcript can be considered as "legally acceptable evidence for summary judgment purposes," (1) the transcript must be filed with the court or otherwise authenticated; (2) the deponent must sign the deposition transcript or waive signature; and (3) there must be a certification by the court reporter before whom the deposition was taken. *Maddy v. Honeywell Intl. Inc.*, 8th Dist. Cuyahoga Nos. 108698 and 109066, 2020-Ohio-3969, ¶ 71, citing *Zapata Real Estate L.L.C. v. Monty Realty Ltd.*, 8th Dist. Cuyahoga No. 101171, 2014-Ohio-5550, ¶ 25, citing *Bank of N.Y. Mellon Trust Co., N.A. v. Unger*, 8th Dist. Cuyahoga No. 97315, 2012-Ohio-1950, ¶ 43.

{¶ 33} The pages from Etayem's deposition attached to his brief in opposition did not include his signature, any certification by the court reporter before whom his deposition was taken, or any authentication. Because the deposition testimony was not properly introduced, the trial court had no obligation to consider it. Without Pasadyn's affidavit and Etayem's deposition testimony, there

is simply no evidence that Etayem had any difficulty obtaining the necessary insurance and financing to complete the deal. It is apparent, therefore, that Etayem did not meet his burden of demonstrating there were any genuine issues of material fact regarding his breach of the contract.

{¶ 34} Moreover, even considering Etayem's deposition testimony, we find no genuine material issues of fact that would require denial of IPlangroup's motion for summary judgment. It is evident from his testimony that Etayem attempted to use the results of an untimely inspection of the property — an inspection he stipulated was to be for informational purposes only — as the basis to back out of the deal. As the trial court properly found, however, the contract delineated the rights and obligations of the parties had he conducted a timely inspection that had revealed defects with the property (*see* lines 182 through 201 of the contract, which include the buyer's right to rescind the contract should a timely inspection reveal material defects not previously disclosed by the seller). Etayem did not conduct a timely inspection, however, and cannot use the results of an untimely inspection to justify his failure to purchase the property in contravention of the contract terms. Additionally, it is apparent that Etayem failed to meet the contract's financing term, which required him to apply for a loan with Fortis Capital Management Group, order an appraisal, and provide IPlangroup with verification of his application for the loan and order of appraisal within ten days of his offer to purchase the property, and to obtain a commitment for the loan no later than four days after IPlangroup's acceptance of his offer to purchase.

{¶ 35} To recover on a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a binding contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages resulting from the breach. *Duncan v. Cuyahoga Community College*, 8th Dist. Cuyahoga No. 101644, 2015-Ohio-687, ¶ 16, citing *Corsaro v. ARC Westlake Village, Inc.*, 8th Dist. Cuyahoga No. 84858, 2005-Ohio-1982, ¶ 20.

{¶ 36} There are no genuine issues of material fact in this case regarding the existence of a binding contract, IPlangroup's performance of the contract, Etayem's breach, and IPlangroup's resulting damages of $25,000 (the difference between the original sales price to Etayem and the new contract price to a different buyer). Accordingly, the trial court did not err in granting summary judgment in favor of IPlangroup and against Etayem. The second assignment of error is overruled.

{¶ 37} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
JAMES A. BROGAN, J.,* CONCUR

*(Sitting by assignment:  James A. Brogan, J., retired, of the Second District Court
of Appeals.)